501 A.2d 484
**Sherman PAYNE**

v.

**STATE of Maryland.**

**No. 429, Sept. Term, 1985.**

Court of Special Appeals of Maryland.

Dec. 12, 1985.

Howard L. Cardin (Cardin & Gitomer, P.A., on brief) Baltimore, for appellant.

Nicolette H. Prevost, Asst. Atty. Gen. (Stephen H. Sachs, Atty. Gen., Kurt L. Schmoke, State's Atty. for Baltimore City and Jeffrey Levenson, Asst. State's Atty. for Baltimore City, on brief) Baltimore, for appellee.

Submitted before GILBERT, C.J., and ADKINS, J., and GETTY (JAMES S.), Associate Judge of the Court of Special Appeals (retired), Specially Assigned.

GILBERT, Chief Judge.

Sherman Payne was convicted in the Circuit Court for Baltimore City of a handgun violation and of the illegal possession of a controlled dangerous substance. Prior to trial on the merits, Payne moved to suppress the physical evidence on the ground that it was seized in violation of the Fourth and Fourteenth Amendments to the Constitution of the United States. The trial judge denied the motion.

At trial the State introduced into evidence a Ruger .357 Magnum handgun, eight cartridges, and a marijuana ciga-

rette, all of which had been seized from Payne by Baltimore City Police Officer Richard T. Grissom.

The sole issue presented by this appeal is whether the handgun, cartridges, and marijuana cigarette were unconstitutionally seized.

### The Facts

At the hearing on the motion to suppress, Officer Grissom testified that on July 18, 1984, while on routine patrol in a high crime area of Baltimore City, he observed a vehicle "double-parked and impeding the free flow of vehicular traffic...." According to Grissom, the vehicle bore Virginia license plates. Grissom further related to the court that when he "pulled behind the vehicle to effect a stop, ... the driver of the vehicle [Payne] was bending over as if picking-up or putting something on the floorboard." As Grissom approached the vehicle, he saw Payne "quickly jam a black [leather] bag down to the floorboard ... concealing it from view." Grissom asked Payne for the latter's operator's license and vehicle registration. During this brief encounter, Grissom noticed that the passenger in the vehicle grew increasingly nervous. Grissom said:

"The passenger in the vehicle was sitting very rigidly like he was scared ... he kept shifting his hands and he kept looking out of the corners of his eyes.... [h]e'd look at me and he'd look at the direction of the bag...."

Officer Grissom further said:

"[In contrast, Payne] appeared to be ... [nervous only] ... when he shoved the bag [on to the floor mat]. I thought that it was very out of context with the way he acted after that. Everything he said after that was very cool, very deliberate...."

His suspicion aroused, Grissom stepped away from the vehicle and, upon seeing another patrol unit in the vicinity, signaled for assistance. After the other unit arrived at the scene, Grissom requested Payne to step out of the vehicle in which Payne was sitting. Upon Payne's compliance, the

officer reached into the vehicle and removed the black leather bag. Grissom told the judge that he patted the exterior of the bag and "felt ... the outline of a handgun." Having felt what he believed to be a handgun, Grissom opened the bag. There he found a Ruger .357 Magnum handgun, eight cartridges, and a marijuana cigarette.

### The Law

Recognizing the need to afford some flexibility to police in their never ending fight against crime and at the same time protect the citizenry from "unreasonable searches and seizures," the Supreme Court, in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), attempted to strike a balance between the two interests. *See also Sibron v. New York*, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968); *Gibbs v. State*, 18 Md.App. 230, 306 A.2d 587, *cert. denied*, 269 Md. 759 (1973).

In *Terry* the Supreme Court said that although both the "stop and the frisk" of an individual are sufficiently intrusive to necessitate Fourth Amendment review, they are not so invasive so as to require the predicate of the standard of "probable cause." *Terry*, 392 U.S. at 16–20, 88 S.Ct. at 1877–1879, 20 L.Ed.2d at 903–905. "[T]he central inquiry" is always "the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security." *Terry*, 392 U.S. at 19, 88 S.Ct. at 1878–1879, 20 L.Ed.2d at 904.

The measure of "reasonableness" for the "stop and frisk" is variously referred to as "suspicion," "reasonable suspicion," "reason to believe." *Gibbs v. State*, 18 Md.App. at 237, 306 A.2d at 591, *cert. denied*, 269 Md. 759. *Terry* makes crystal clear that "suspicion" or "belief" must be founded upon "specific and articulable facts which, taken together with rational inferences," properly deducible therefrom, "reasonably warrant that intrusion." *Terry*, 392 U.S. at 21, 88 S.Ct. at 1880, 20 L.Ed.2d at 906. It is equally clear that the officer "must be able to articulate specific facts justifying both the stop and, quite independently, the

'frisk,'" inasmuch as the two are separate and distinct intrusions. *Gibbs,* 18 Md.App. at 239, 306 A.2d at 592, *cert. denied,* 269 Md. 759.

In the matter *sub judice* there is no challenge to the propriety of Officer Grissom's conduct in "stopping" Payne since Payne was double parked—a violation of Md.Trans. Code Ann. § 21–1003(c)(7) (1984 Repl.Vol.). Payne's attack is not directed at the "stop"; he assails the "frisk," which he asserts was an unlawful invasion of his Fourth Amendment rights.

*Terry,* as we have previously said, requires that a police officer possess a "suspicion" or "belief" that would reasonably warrant the intrusion. *Terry,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889. *Sibron v. New York,* 392 U.S. at 64, 88 S.Ct. at 1903, 20 L.Ed.2d at 935, made clear that because the purpose undergirding the "frisk" is the protection of the officer effecting the "stop," the officer's suspicion must be based on "particular facts from which he reasonably inferred that the individual was armed and dangerous." Phrased another way, a police officer may conduct a "frisk" of an individual only when the officer perceives conduct which reasonably leads him to believe that the person whom he has confronted may be presently armed and dangerous. *Terry,* 392 U.S. at 29–30, 88 S.Ct. at 1884–1885, 20 L.Ed.2d at 910–911.

Notwithstanding that the establishment of a sufficiently individualized and articulable suspicion to believe a person is armed and dangerous may serve to justify a "frisk," there remains the problem of the scope of the frisk. Chief Justice Warren penned for the majority in *Terry*[1] that because a frisk is designed exclusively to detect the presence of offensive weapons, a police officer "is entitled ... to conduct a carefully limited search of the outer clothing of ... [persons whom he believes to be armed and dangerous] in an attempt to discover weapons which might be used to

---

1. Justices Black, Harlan, and White concurred. Justice Douglas dissented.

assault him." *Terry*, 392 U.S. at 30, 88 S.Ct. at 1884–1885, 20 L.Ed.2d at 911. Some courts interpreted *Terry* as authorizing only limited frisks of the *person*.[2] The Supreme Court, however, has gradually expanded *Terry*'s scope with respect to a protective frisk.

Four years after *Terry*, the Court in *Adams v. Williams*, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972), held that the police, acting on information supplied by a known informant, may reach into the passenger compartment of an automobile so as to remove a gun from the driver's waistband, even though the gun was not apparent from outside the vehicle and the police knew of its existence only because of the tip. The *Adams* decision rested in part on the growing concern over the danger faced by police officers in automobile situations. The Court warned that such a "search" was not to be used to discover evidence of crime but was limited to its "protective purpose." *Terry* manifests that "the sole justification of [such] search is the protection of ... police officer[s] and others nearby, and ... [the search] must be confined ... to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments [which could be used] for the

---

2. *People v. Long,* 413 Mich. 461, 320 N.W.2d 866 (1982), *rev'd,* 463 U.S. 1032, 103 S.Ct. 3969, 77 L.Ed.2d 1201 (1983). *See also Government of the Canal Zone v. Bender,* 573 F.2d 1329 (5th Cir.1978). *But see Williams v. State,* 19 Md.App. 204, 310 A.2d 593 (1973), noting that one of the purposes of search incident to arrest is self-protection, which is also the purpose of the frisk, and then adding:
"It follows ineluctably from that common purpose that the range in space of preventive police activity is coextensive in the 'search incident' situations and in the 'frisk' situations. To serve the purpose giving birth to the exception in the first place, it is as necessary to the 'frisk' as to the 'search incident' to define the perimeter of permitted police activity as that area within 'the lunge,' 'the grasp,' 'the reach' of the suspect—that area 'which may fairly be deemed to be an extension of his person.' ... Whether the police are arresting a suspect or are temporarily detaining him for questioning, the potential ability of the suspect to grab for a weapon is a constant factor. Although the 'search incident' may be more intensive than the 'frisk,' the two will be, perforce, equally extensive." (Citations omitted.)

assault ... [on] the police officer." *Terry,* 392 U.S. at 29, 88 S.Ct. 1884, 20 L.Ed.2d at 911.

We are cognizant of the fact that whenever a police officer approaches a person seated in an automobile, the officer has no way of foretelling whether the individual in the vehicle is armed. The risks to the officer's life and limb are considerable.[3] Those risks were the basis for the Court's decision in *Pennsylvania v. Mimms,* 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977). There the Court concluded that police officers may order persons to alight from a motor vehicle during a stop for a traffic violation. Furthermore, the Court held that the officer may then "frisk" those persons for weapons if there is reasonable belief that the persons were armed and dangerous.[4]

The holding of *Michigan v. Long,* 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983), fully extended the reach of *Terry, Sibron, Adams,* and *Mimms.* Citing its concern for the "especially hazardous" nature of roadside encounters,[5] the Court explicitly rejected the idea that *Terry* permitted only limited pat-down searches of persons. *Long* declared that when an individual is properly stopped while in or beside an automobile, the entire passenger compartment of that automobile is within the "frisk" perimeter. *Long,* 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201.

In permitting the "frisk" of the passenger compartment of a motor vehicle, the Court relied upon *Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), and

---

**3.** Footnote 13 to *Michigan v. Long,* 463 U.S. 1032, 1048, 103 S.Ct. 3469, 3479–3480, 77 L.Ed.2d 1201, 1219 (1918), states:

"'According to one study, approximately 30% of police shootings occurred when a police officer approached a suspect seated in an automobile. Bristow, *Police Officer Shootings—A Tactical Evaluation,* 54 J.Crim.L.C. of P.S. 93 (1963).' *Adams v. Williams,* 407 U.S. [143] at 148 n. 3, 92 S.Ct. [1921] at 1924 n. 3 [32 L.Ed.2d 612 (1972)]."

**4.** In the minds of many persons, the unlicensed carrying of a deadly weapon clearly makes the carrier dangerous.

**5.** See note 3 *supra.*

*New York v. Belton,* 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981). *Chimel* held that an arresting officer must be allowed "to remove any weapons that the (arrestee) might seek to use in order to resist arrest or effect his escape." 395 U.S. at 763, 89 S.Ct. at 2040, 23 L.Ed.2d at 694. To achieve that objective the officer is, of necessity, permitted to conduct a "search of the arrestee's person and the area 'within his immediate control'—construing that phrase to mean the area from within which he might gain possession of a weapon." *Chimel,* 395 U.S. at 763, 89 S.Ct. at 2040, 23 L.Ed.2d at 694. Twelve years after *Chimel,* the Court in the case of *New York v. Belton,* 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 clarified what it meant by the phrase, "area within the immediate control of the arrestee." *Belton* made clear that: Whenever a police officer has made a lawful custodial arrest of the occupant of a motor vehicle, the officer may make a contemporaneous search of the passenger compartment of the vehicle as well as any container found therein. 453 U.S. at 460, 101 S.Ct. at 2864, 69 L.Ed.2d at 775.

Notwithstanding that both *Chimel* and *Belton* were concerned with deciding whether searches were supported by probable cause, the *Long* court held that because the purpose of a search incident to arrest is identical to the aim or goal of the "frisk" (*i.e.,* the self-protection of the officer), it would allow under certain circumstances a "frisk" of the interior of parts of the vehicle. The Court then declared:

> "[T]he search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible *if the police officer possesses a reasonable belief based on 'specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant' the officers in believing that the suspect is dangerous and the suspect may gain immediate control of weapons.* (Footnote omitted)." (Emphasis supplied.)

*Michigan v. Long,* 463 U.S. at 1049, 103 S.Ct. at 3480, 77 L.Ed.2d at 1220.

The record before us discloses absolutely no "specific and articulable facts" from which a reasonable inference can be drawn that Payne was armed and dangerous. All Grissom saw was a car double parked, a motion by Payne during which Payne either placed something on or took something from the floor, a jamming of a "black bag ... to the floorboard," and "furtive" glances by a person who was a passenger in Payne's car. How anyone can reasonably deduce from those facts that Payne had a gun totally eludes us, unless Grissom was clairvoyant. Grissom might just as easily have concluded that Payne had placed on the floor of the car narcotics, or pornographic matter, or receipts of a "numbers" pickup, or money or jewelry. The list is innumerable.

Based upon our independent constitutional review, we must conclude that the officer did not articulate specific facts from which a rational inference could be drawn that Payne was armed and dangerous. We conclude that the motion to suppress should have been granted.

JUDGMENT REVERSED.

COSTS TO BE PAID BY THE MAYOR AND CITY COUNCIL OF BALTIMORE.