573 A.2d 92

**Zachary Tyrone WEEDON**

v.

**STATE of Maryland.**

**No. 1267, Sept. Term, 1989.**

Court of Special Appeals of Maryland.

May 8, 1990.

Arthur A. DeLano, Jr., Asst. Public Defender (Alan H. Murrell, Public Defender, on the brief), Baltimore, for appellant.

Gwynn X. Kinsey, Jr., Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and Andrew L. Sonner, State's

Atty. for Montgomery County, Rockville, on the brief), for appellee.

Submitted before MOYLAN, BLOOM and CATHELL, JJ.

BLOOM, Judge.

Zachary Tyrone Weedon was convicted, in a bench trial in the Circuit Court for Montgomery County, of possession of a controlled dangerous substance with intent to distribute it and of simple possession of that substance. Sentenced to serve a term of ten years in prison, he appealed, contending that the court erred (1) in failing to make a proper determination as to whether he had knowingly and voluntarily waived his right to a jury trial and (2) in denying his motion to suppress evidence taken from his person by a police officer.

We agree with appellant's second contention. It will not be necessary to address the first one.

I

On the night of 19 November 1988, a number of Montgomery County police officers, including officers from the Narcotics Section of the Special Investigation Division and a SWAT team, executed a search and seizure warrant for an apartment at 413 Muddy Branch Road. The warrant was issued on the basis of probable cause to believe that the specified residence was used as a distribution point for crack cocaine. The presence of the SWAT team was deemed appropriate because it was anticipated that persons in the apartment who were trafficking in crack cocaine might be armed.

While the police officers, some visibly armed with heavy weapons, were deploying to enter the apartment house, an automobile—a BMW—drove into the parking area for the apartment building, backed into a parking space, and parked with its lights out. The occupants of the vehicle, three black males, remained in the car, however. A short

time thereafter, the BMW, with its lights off, was driven at a high rate of speed across the parking lot, past a police van, around the building, and toward the public highway. One of the officers stationed at the van sent a message by radio to other police cars patrolling the perimeter to stop the BMW.

Two officers in a patrol car stopped the BMW. With guns drawn, they invited the driver and passengers to alight. A third policeman, Officer Howard, arrived in time to oversee appellant's exit from the back seat of the car. The policemen ordered appellant and the two other men to lie face down on the ground while the officers conducted a pat-down for weapons. Officer Howard first put his fingers into appellant's hip pocket in an attempt to find some identification. Then he frisked appellant for weapons. Feeling no weapons while conducting a frisk with appellant in a prone position, Officer Howard ordered appellant to turn over so he could pat down the anterior surfaces of appellant's clothing. He then felt, in the region of appellant's groin, a hard, rectangular, box-like object, about three inches long by two inches wide.[1] He then reached under appellant's belt and trouser waistband to extract the object, which turned out to be a clear plastic box containing a substance that Officer Howard, based on his training, experience, and expertise in drug cases, recognized as crack cocaine. Appellant was thereupon formally placed under arrest.

### A.

Appellant contends that he was arrested and searched without probable cause. He argues that the arrest occurred when he was ordered out of the car at gunpoint and forced to lie face down on the ground. The judge who heard the motion to suppress, however, ruled that the

---

1. The box was approximately one-fourth of an inch thick. Officer Howard testified that when he first felt the box under appellant's clothing he could not gauge its depth.

removal of appellant from the automobile and the ensuing pat-down for weapons was the type of temporary seizure, a reasonable investigatory stop and frisk, that was approved in *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

■ We disagree with appellant's assessment of the event. *Terry* held that if there is an articulable basis for a reasonable belief that crime is afoot, *i.e.,* is being or is about to be committed, a police officer may make a *brief* stop of a suspect in order to investigate. Such a stop, albeit brief, constitutes a seizure of the person, but not an unreasonable one. And if there is also an articulable basis for a reasonable belief that the suspect may be armed, the officer may "frisk" him, that is, pat-down the exterior of the suspect's clothing to insure that he is not armed. That intrusion too is a reasonable one, for the protection of the officer. The fact that the stop is at gunpoint or that the frisk is accomplished with the suspect forced to lie prone on the ground does not *per se* elevate the investigatory stop that can be made on reasonable suspicion to an arrest or seizure requiring probable cause. *See Lee v. State,* 311 Md. 642, 664–67, 537 A.2d 235 (1988). A reasonable belief that the person stopped for investigation might be armed and dangerous may justify such use of force in order to minimize the risk to the officer.

B.

■ Having concluded that probable cause was not required and that reasonable suspicion would suffice to justify what the Court of Appeals termed a "hard take down" (*Lee,* at 661, 537 A.2d 235), we must now determine whether there was in fact an articulable basis for reasonable suspicion in this case.

We believe that, under the totality of the circumstances, the police had reason to suspect that the occupants of the BMW had some connection with the drug operation that was the subject of the search warrant being executed at the

time. The BMW, with lights on, was driven into the apartment complex parking lot in a normal manner. There was nothing unusual about the manner in which it was parked, by backing into a parking space. What was unusual, and cause for suspicion, was the fact that all three occupants remained in the parked vehicle, and in a position to observe heavily armed police officers crossing the parking lot and deploying to enter the apartment house. The BMW, with lights off, drove around the building and sped toward the exit. That was highly unusual, suspicious behavior—not enough to constitute probable cause to believe that the occupants of the automobile were connected with the apartment being raided by the squad of armed policemen, but enough to justify an officer's suspicion that they might be.

### C.

Our conclusion that the stop of the BMW and the "hard take down" and frisk of its occupants were permissible temporary seizures of appellant and his companions, because they were based on reasonable suspicion, does not conclude our examination of the court's ruling on appellant's suppression motion. The object that appellant sought to suppress was the plastic box, containing crack cocaine, that Officer Howard seized. We must determine whether that seizure, the removal of the box from appellant's person, was lawfully within the scope of a *Terry* investigatory stop and frisk. The Supreme Court pointed out in *Terry* that the "manner in which the seizure and search were conducted is, of course, as vital a part of the inquiry as whether they were warranted at all." 392 U.S. at 28, 88 S.Ct. at 1883. Continuing, the Court stated that, under the exclusionary rule, evidence may not be admitted "if it was discovered by means of a seizure and search which were not reasonably related in scope to the justification for their initiation." *Id.* at 28–29, 88 S.Ct. at 1883–84.

When Officer Howard frisked appellant by patting down his clothing, that intrusion on appellant's liberty and privacy was justified only on the theory that when a police

officer makes an investigatory stop of a person reasonably suspected of (1) being engaged in crime and (2) being armed, he is entitled to minimize the risk to himself by a very limited pat-down of outer clothing to feel for weapons. He may not conduct a warrantless search under the guise of this protective measure.

As Judge Moylan, writing for this Court in *Anderson v. State*, 78 Md.App. 471, 553 A.2d 1296 (1989), explicated:

> There is under the Fourth Amendment an ever present requirement for the police to minimize even necessary intrusions. The permitted scope of an intrusion is whatever is necessary to serve the purpose of that particular intrusion, but nothing more. Both a stop and its sometimes attendant frisk are prerogatives permitted the police under predicates less substantial than probable cause. The reason the Fourth Amendment permits a policeman to conduct a minimal search (a frisk) of a suspect upon such a lesser predicate is the necessity of protecting from harm the life and limb of the stopping officer. Because almost all weapons—guns, knives, blackjacks, brass knuckles—are hard, palpable objects, their presence may be detected by a close pat-down of the exterior of the clothing surface. Because that is all that is necessary, that is all that is permitted.

78 Md.App. at 477–78, 553 A.2d 1296.

The frisk, therefore, requires its own independent justification, not only as to legitimacy but also as to scope. A frisk or pat-down is justifiable only if there is a particularized and individualized suspicion that the suspect may be armed and dangerous.

> The police officer is not entitled to seize and search every person whom he sees on the street or of whom he makes inquiries. Before he places a hand on the person of a citizen in search of anything, he must have constitutionally adequate, reasonable grounds for doing so. In the case of the self-protective search for weapons, he must be able to point to particular facts from which he

reasonably inferred that the individual was armed and dangerous.

*Sibron v. New York*, 392 U.S. 40, 64, 88 S.Ct. 1889, 1903, 20 L.Ed.2d 917 (1968). Concerning the scope of the frisk, only a pat-down of the exterior of the clothing surface is permitted, because that "is enough to reveal the presence of large and palpable weapons, such as guns, knives, blackjacks, and brass knuckles." *Alfred v. State*, 61 Md.App. 647, 669, 487 A.2d 1228 (1985). In *Alfred*, a police officer conducting a pat-down of a young man wearing a snugly fitting pair of cut-off jeans felt a small flat object in the suspect's back pocket. Surmising (correctly) that the object was an item of recently stolen jewelry, the officer extracted it from the suspect's pocket. We held that, since the object he felt was obviously not a weapon, the seizure was unlawful.

In the case *sub judice*, what Officer Howard felt inside appellant's pants during the pat-down was a *small* (3 inch by 2 inch), thin, rectangular, box-shaped object. He asserted that he did not *know* that it was not a weapon of some kind, and on that basis the motions judge ruled, and the State now argues, that the seizure of the box was lawful. We disagree.

The limited protective search as a preliminary to investigative questioning during a *Terry* stop is justified only by the officer's reasonable belief that the suspect is armed and dangerous. *Terry*, 392 U.S. at 24–27, 88 S.Ct. at 1881–1883; *Michigan v. Long*, 463 U.S. 1032, 1045–52, 103 S.Ct. 3469, 3479–82, 77 L.Ed.2d 1201 (1983). Applying that reasoning to the scope of the search and in view of the minimization requirement of the Fourth Amendment, we hold that if a police officer, while conducting a pat-down during a *Terry* stop, feels an object in or under the suspect's clothing, he may remove (seize) that object only if he has an articulable basis to believe that it is a weapon which would pose a threat to his life or safety during the ensuing investigatory interrogation. It is not enough to justify the seizure that the officer cannot rule out the possibility that the object is some miniaturized, deadly weapon of a type as

yet unknown to him. Since the officer had no reason to believe that the small box-shaped object he felt under appellant's clothing was a weapon that posed a threat to him, he had no lawful justification for its seizure. The court erred in denying appellant's suppression motion.

We may not let appellant's established guilt influence an assessment of his constitutional rights. Judge Orth, writing for the Court of Appeals in *Riddick v. State,* 319 Md. 180, 571 A.2d 1239 (1990), quoted from *Arizona v. Hicks,* 480 U.S. 321, 329, 107 S.Ct. 1149, 1154, 94 L.Ed.2d 347 (1987), in which Justice Scalia pointed out that

> there is nothing new in the realization that the Constitution sometimes insulates the criminality of a few in order to protect the privacy of us all.

JUDGMENTS REVERSED.

COSTS TO BE PAID BY MONTGOMERY COUNTY.