GARRITY, Judge.
 

 Over twenty years ago the United States Supreme Court, in the case of
 
 Terry v. Ohio,
 
 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), created what is now known as the stop and frisk exception to the Fourth Amendment warrant requirement. At the time the exception was first recognized, it was considered by legal writers to have only limited application. Over the years the exception’s application has been broadened so that automobiles and even homes are subject to a police search under the exception. In the case before us we are asked to decide whether the scope of a
 
 Terry
 
 search extends to allowing a police officer to remove a suspect’s underclothing.
 

 Early in the evening of July 27, 1989, a group of Montgomery County policemen, headed by Sergeant James Snow and Officer Don Inman, executed a search warrant. The warrant authorized the police to search the ground floor apartment of Ms. Jamie McKinley, which was located on North Van Burén Street in Rockville, Maryland. A group of policemen, together with a SWAT Team, arrived at the apartment around 7:30 p.m. They arrested Ms. McKinley and took her to the police station. They then conducted an extensive search of her apartment. In the course of the search they found drugs and drug paraphernalia used for consuming drugs.
 

 Around 9:00 p.m., while the police were still conducting their search, Luis Alberto Aguilar, the appellant, pushed open one of the sliding glass doors to the apartment and made an apparently uninvited entry into the apartment. Sergeant Snow testified that the police were startled by appellant’s entry. Appellant wore no shirt, and was attired only in jeans and tennis shoes. He was described as having
 
 “a
 
 wide-eyed look in his eyes.” When he first entered he did not say anything, but just looked around the room. Sergeant Snow approached appellant and asked him what he was doing. Appellant did not respond; instead, he said, “I am looking for Jamie.” The sergeant asked appellant to describe Jamie, but appellant could not do so.
 

 At that point Officer Inman approached and asked appellant for identification. Appellant did not respond. The
 
 *280
 
 officer then asked appellant if he were armed. Appellant still did not reply, so the officer “patted [appellant] down.” The officer did not feel anything during the pat-down, so he asked appellant again whether he was armed. Appellant continued to remain silent. What happened next was explained by Officer Inman in his direct testimony:
 

 [OFFICER INMAN]: I asked him to unbuckle his pants and he took his hands and he fumbled with his belt. It didn’t seem like he was doing what I told him to do.
 

 I unbuckled his pants and pulled his pants down and I pulled his underwear out and down and at that time a plastic baggie that was concealed in his underwear fell to the ground.
 

 [PROSECUTOR]: Did you reach into his underwear?
 

 [OFFICER INMAN]: No, I didn’t.
 

 * * * * * *
 

 [PROSECUTOR]: I asked you what happened next.
 

 [OFFICER INMAN]: The bag fell to the floor and I reached down and picked it up, saw what it was and he was placed under arrest and then he was strip searched.
 

 * * * # * *
 

 [PROSECUTOR]: Why did you pull his underwear back?
 

 [OFFICER INMAN]: I perceived him as a threat to me and the other officers there.
 

 [PROSECUTOR]: Why?
 

 [OFFICER INMAN]: I thought that there was a very good chance that he had some sort of weapon concealed in his pants that I couldn’t see or feel with the pat-down.
 

 [PROSECUTOR]: What circumstances gave rise to that fear?
 

 [OFFICER INMAN]: His total unresponsive attitude towards us when asked who he was, why he was there, for I.D., and for my request to unbuckle his pants. It just seemed like every time we said something and he made no response, I felt that he was going over something with his mind, he was going to do something. I have seen that countless times. He seemed to be calculating something. I didn’t know what it was.
 

 
 *281
 
 The officer went on to explain that the reason he believed appellant might be armed was because:
 

 I have been a policeman for 17 years and I have seen countless times where people have hidden weapons within their pants, within their underwear, taped to their legs, razor blades, even guns down in the groin area inside your underwear. It is something that is hammered into us regularly, especially in the narcotics unit and it is something that we are very concerned about and something that we do every time with everybody.
 

 The bag which fell out of appellant’s pants contained a large quantity of cocaine.
 

 A trial judge in the Circuit Court for Montgomery County after hearing this evidence convicted appellant, Luis Alberto Aguilar, of possession of cocaine with intent to distribute.
 

 Appellant argues in this Court that his conviction should be reversed because the cocaine was recovered from him pursuant to an illegal search. The circuit court ruled that the search was valid under the
 
 Terry
 
 doctrine. We are now asked to decide whether the trial judge was correct.
 

 In
 
 Terry v. Ohio, supra
 
 and the companion case of
 
 Sibron v. New York,
 
 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968), the Supreme Court ruled that police officers may stop persons when the police have specific articulable facts which, taken together with rational inferences from those facts, create reasonable suspicion that the person has been or is about to be involved in criminal conduct. In addition, if an officer “perceives conduct which reasonably leads him to believe that the person ... may be armed and dangerous,” the police may frisk the person for weapons.
 
 Payne v. State,
 
 65 Md.App. 566, 570, 501 A.2d 484,
 
 cert. denied
 
 305 Md. 621, 505 A.2d 1342 (1986).
 

 Appellant concedes that the stop effected in this case was legal. He argues that the subsequent search was illegal for two reasons: first, because the police did not observe anything which justified them in believing he was armed and dangerous; and second, because even if they did have a basis for believing he was armed and dangerous, the search
 
 *282
 
 which the police conducted exceeded the scope allowed by law.
 

 We shall first consider whether the facts justified the police officer’s belief that appellant was armed and dangerous (and therefore subject to an appropriate frisk). As an initial matter, we note that a valid stop does not in itself constitute justification for a frisk.
 
 Ybarra v. Illinois,
 
 444 U.S. 85, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979), and
 
 Snow v. State,
 
 84 Md.App. 243, 250, 578 A.2d 816 (1990). In order for a search to be valid under the
 
 Terry
 
 exception, the searching officer must perceive “conduct which reasonably leads him to believe that the person whom he has confronted may be presently armed and dangerous.”
 
 Payne v. State, supra
 
 65 Md.App. at 570, 501 A.2d 484. Stated another way, the police, before they are permitted to conduct a
 
 Terry
 
 search, must have a reason to believe both that the suspect is armed and that the suspect has an inclination to use his weapon to harm the police or other nearby persons.
 

 Before we consider whether the police in this case had a reasonable basis for believing that appellant was armed and dangerous, we set forth the test by which we shall measure the evidence.
 

 The law requires us to make our own independent determination of the constitutional effect of the facts which were found by the lower court.
 
 Ciriago v. State,
 
 57 Md.App. 563, 573, 471 A.2d 320,
 
 cert. denied,
 
 300 Md. 152, 476 A.2d 721 (1984). However, the lower court is responsible to evaluate the credibility of witnesses and to make “first level fact-finding.” We give great weight to those determinations and are permitted to reject them only if the testimony relied upon by the lower court is inherently improbable.
 
 Borgen v. State,
 
 58 Md.App. 61, 472 A.2d 114 (1984), and
 
 Jordan v. State,
 
 72 Md.App. 528, 534, 531 A.2d 1028 (1987). In applying this test here, we accept the circuit court’s fact findings. The findings relevant to the question before us are as follows. First, the circuit court
 
 *283
 
 judge found that appellant entered the apartment unannounced and with no explanation for doing so. His attire and general behavior, coupled with the fact that he said he was looking for Jamie, strongly suggested that he was involved in some way with the use and/or sale of drugs. Secondly, the circuit court found as a fact that appellant failed to respond to the officers’ questions. The trial judge found that the combination of this evidence reasonably led the police to suspect that appellant was involved with drugs. In addition, the circuit court found that the police officers, by virtue of their training and experience, knew that people who are involved in the drug culture frequently carry concealed weapons. The circuit court went on to rule that these findings justified the search. We accept the circuit court’s first level facts. Using those facts as our basis, we now make our own constitutional appraisal of whether the circuit court was correct in ruling that the search was valid.
 

 The first question we consider is whether the police were justified in believing that they were entitled to conduct any type of search of appellant. The test by which we answer this question is whether the evidence showed that the police “perceived conduct which reasonably [led them] to believe that the person whom [they] have confronted may be presently armed and dangerous.”
 
 Payne v. State, supra
 
 65 Md.App. at 560, 501 A.2d 484. The facts established the requisite conduct; we hold that the police were entitled to conduct a
 
 Terry
 
 search.
 

 Just because the police were entitled to conduct a
 
 Terry
 
 search does not mean that the search they conducted was valid. This is because there are limits on the extent/ scope that a search under the
 
 Terry
 
 doctrine may be conducted. We have no difficulty with the initial pat-down frisk; that was a legal
 
 Terry
 
 frisk. The question is whether when Officer Inman removed appellant’s underwear, he exceeded the scope allowed under the
 
 Terry
 
 exception. We
 
 *284
 
 begin our analysis of this second question by considering what scope has been allowed in previous
 
 Terry
 
 searches.
 

 When the
 
 Terry
 
 exception was first recognized, the scope of searches allowed under the exception was limited to the suspect’s outer clothing.
 
 Alfred v. State,
 
 61 Md.App. 647, 669, 487 A.2d 1228 (1985). Over the years, the scope allowed for a
 
 Terry
 
 search has been expanded. The scope, for example, was expanded to allow the search of a suspect’s waistband where the police see a bulge in the waistband.
 
 Adams v. Williams,
 
 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972). Some courts have allowed an officer to search a suspect’s inner clothing where the outer clothing is bulky.
 
 United States v. Mack,
 
 421 F.Supp. 561 (W.D.Pa. 1976),
 
 aff'd,
 
 568 F.2d 771 (3rd Cir 1978). When a suspect is stopped in a motor vehicle, the police may search the entire passenger compartment of the vehicle.
 
 Michigan v. Long,
 
 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983). Furthermore, a motor home is, for purposes of a
 
 Terry
 
 search, considered a vehicle and subject to a full search for weapons.
 
 California v. Carney,
 
 471 U.S. 386, 105 S.Ct. 2066, 85 L.Ed.2d 406 (1985), and
 
 Doering v. State,
 
 313 Md. 384, 545 A.2d 1281 (1988). In two Maryland cases, the appellate courts of this State have allowed the police to search closed bags a suspect was carrying at the time of the stop. In
 
 Jordan v. State, supra,
 
 a police officer was told to go to a certain location to investigate on-going narcotics activity. When he reached the area he saw appellant crossing a street holding a bag. As the officer approached, the appellant raised the bag with both hands and pointed it at the officer. At the same time appellant was “manipulating something from the back of the bag.” The officer grabbed the bag, felt it, determined that it contained a hard object which could have been a gun, and then looked inside. We held that these facts constituted a sufficient basis for the search of the bag. The second “bag” case is
 
 Lee v. State,
 
 311 Md. 642, 537 A.2d 235 (1988). In that case, the police received an anonymous but reliable tip that the two people who were wanted for a recent armed robbery would be at a
 
 *285
 
 certain tennis court on a particular afternoon. The informant also told the police that the two men would have a small blue bag with a handgun inside it. The police went to the tennis court and found the two men. The men were ordered at gun point to lie on the ground. A blue bag was hanging on a fence a few feet away from where the suspects were ordered to lie. The police seized the bag and looked inside. The Court of Appeals ruled that the police were entitled to take hold of the bag and feel it to determine whether it might hold a gun. The Court, however, did not reach the issue of whether the police were authorized under the
 
 Terry
 
 doctrine to look into the bag without first feeling (frisking) it.
 

 The right to search does have limitations. If an officer pats a person’s clothing and feels only a soft object, a further search is not allowed.
 
 Anderson v. State,
 
 78 Md.App. 471, 487, 553 A.2d 1296 (1989). Where the pat-down discloses a hard object, but the officer can determine from the shape of the object that the object is not a weapon, a further search is not allowed.
 
 Alfred v. State,
 
 61 Md. App. 647, 487 A.2d 1228 (1985). In
 
 Whitmire v. State,
 
 61 Md.App. 548, 487 A.2d 686 (1985), a police officer conducted a frisk and found a hard cylinder object inside a suspect’s pocket. He could not identify the cylinder, so he reached in the pocket and removed its contents. At trial he explained that he had reached in the pocket to make sure that a knife was not concealed inside the container. We ruled that the seizure was illegal because it was not supported by “a
 
 reasonable
 
 belief that appellant was armed.”
 
 Id.
 
 at 552, 487 A.2d 686.
 
 Weedon v. State,
 
 82 Md.App. 692, 573 A.2d 92 (1990), involved another case where an officer felt an unidentifiable hard object. The officer in
 
 Weedon
 
 reached in the suspect’s pocket because he could not “rule out the possibility that the object [was] some miniaturized, deadly weapon of a type as yet unknown to him.”
 
 Id.
 
 at 699-700, 573 A.2d 92. We held that this search was illegal because the officer had no reason to believe that the object he felt was a weapon which posed a threat to him. Finally, we
 
 *286
 
 pointed out in
 
 Anderson v. State, supra,
 
 that an officer may not, without first conducting a pat-down, reach into a suspect’s pocket and remove hard objects simply because the officer has a reasonable basis to believe that the suspect is armed.
 

 The Supreme Court set forth the test for measuring the scope of a
 
 Terry
 
 search in its opinion in
 
 Michigan v. Long, supra
 
 463 U.S. at 1049, 103 S.Ct. at 3480 where the Court said:
 

 [T]he search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on “specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant” the officer in believing that the suspect is dangerous and the suspect may gain immediate control of weapons, (footnote omitted).
 

 We restated the test in
 
 Alfred v. State, supra
 
 61 Md.App. at 659, 487 A.2d 1228 where we said:
 

 As we measure in this case the reasonableness not of the stop, but of the
 
 scope
 
 of the stop, the burden of proving that reasonableness is clearly allocated to the State:
 

 “It is the State’s burden to demonstrate that the seizure it seeks to justify on the basis of a reasonable suspicion was sufficiently limited in scope and duration to satisfy the conditions of an investigative seizure.”
 
 Florida v. Royer,
 
 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983).
 

 From these cases we shall attempt to distill a rule for measuring the scope allowed to the police to conduct a
 
 Terry
 
 search. Two preliminary observations must first be made. The first.is that scope is not measured in geographic terms of inches and feet from the suspect. Second, the right to conduct a
 
 Terry
 
 search does not give the police the right to make absolutely sure that no weapon is present.
 

 
 *287
 
 The scope allowed the police is limited by the requirement that as a prerequisite to whatever search is conducted, a pat-down or frisk of the outer surface (clothing, etc.) must be made before any more intrusive search is made. As earlier observed, if the pat-down reveals a hard object which could be a weapon, a further search is allowed. But, if the frisk reveals only a soft object, a hard object which the officer can determine is not a weapon, or a hard object which cannot be determined to be a weapon, further search is prohibited unless the officer either observes conduct which leads him to believe the suspect is armed and dangerous or has some other reliable basis for believing that the suspect is armed and dangerous.
 

 In the instant case, the required frisk was conducted but nothing was felt. The officer said he knew from experience that drug dealers frequently carry weapons under their clothing which cannot be felt. He pursued his search for the unfelt but suspected weapon. From a security point of view the officer’s action was eminently logical. The problem is that no legal basis exists for justifying the officer’s further intrusion. The officer did not arrive on the scene with any reliable information that appellant was armed and dangerous. The officer did observe appellant but did not see any conduct which suggested that appellant was armed and dangerous. Even the frisk itself did not give any indication that appellant was armed. The only reason the officer had for conducting the search was his suspicion that appellant was involved with illegal drugs and his knowledge that illegal drug dealers frequently carry concealed weapons. We hold that under the circumstances of this case the search exceeded the scope allowed under the
 
 Terry
 
 doctrine.
 

 The State apparently expected this ruling and has presented three reasons why we should uphold the search.
 

 The State’s first reason is that the search should be upheld because it was reasonable under the totality of the circumstances. As we pointed out above, it was reasonable
 
 *288
 
 for the police to have believed that appellant was armed. It was also reasonable for the police to have wanted to protect themselves. The fact that the policeman’s action was reasonable to him, however, does not make his action constitutional. The constitution simply does not permit the police to take the precautions they took in this case.
 

 The State’s second reason for upholding the search is that the search was authorized by the warrant upon which the police were conducting the apartment search. The warrant, as it was originally submitted to the issuing judge, would have authorized the police to have searched all persons “who arrive[d] at the residence during the execution of the search warrant.” The issuing judge expressly deleted this authority from the warrant. It follows that the warrant did not authorize a search of appellant since appellant did not arrive at the residence until IV2 hours after the search began.
 

 The State’s final reason for upholding the search is that the search was legal because it was conducted incident to a lawful arrest. According to the State, the police had probable cause to arrest appellant at the time the search was made, and hence the search was valid as one made incident to an arrest. In urging this reason the State contends that the police had probable cause to arrest appellant because appellant was shirtless, wide-eyed, nervous, appeared at a place where drugs were, and asked for a person who had just been arrested.
 

 Probable cause exists where the facts and circumstances within the arresting officers’ knowledge and of which they had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed.
 
 Draper v. United States,
 
 358 U.S. 307, 313, 79 S.Ct. 329, 333, 3 L.Ed.2d 327 (1959), and
 
 Riddick v. State,
 
 319 Md. 180, 194, 571 A.2d 1239 (1990). In
 
 Malcolm v. State,
 
 314 Md. 221, 550 A.2d 670 (1980), the Court of Appeals ruled that the determination of whether probable
 
 *289
 
 cause exists in a particular case is made by the “totality of the circumstances” balancing test set forth in
 
 Illinois v. Gates,
 
 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). The facts presented here do not satisfy the test for probable cause.
 

 We hold that the search conducted in this case was illegal because it exceeded the scope allowed by the law. Consequently, the cocaine discovered in the course of the search should have been suppressed. Because the cocaine was admitted into evidence, we must reverse the judgment.
 

 JUDGMENT REVERSED.
 

 COSTS TO BE PAID BY MONTGOMERY COUNTY.