601 A.2d 1115

**Michael Author WATKINS**

v.

**STATE of Maryland.**

**No. 82, Sept. Term, 1991.**

Court of Special Appeals of Maryland.

Feb. 26, 1992.

Bradford C. Peabody, Asst. Public Defender (Stephen E. Harris, Public Defender, on the brief), Baltimore, for appellant.

Mary L. Lucasse, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and Sandra A. O'Connor, State's

Atty. for Baltimore County, Towson, on the brief), for appellee.

Submitted before BISHOP, GARRITY and BLOOM, JJ.

GARRITY, Judge.

Michael Author Watkins, the appellant, was convicted in a non-jury trial in the Circuit Court for Baltimore County (Bollinger, J.) of possession of cocaine, possession of marijuana, possession of drug paraphernalia and transporting a handgun. Sentences for these convictions were imposed and this appeal followed.

The sole question raised in this appeal is whether evidence seized by the police in the course of a *Terry*[1] stop was admissible. The trial judge, in denying appellant's motion to suppress, ruled that the evidence was admissible. We must now decide whether that ruling was correct.

### SUPPRESSION HEARING

In reviewing the denial of a motion to suppress under Maryland Rule 4–252, we look only to the record of the suppression hearing. We do not consider the record of the trial. *Trusty v. State*, 308 Md. 658, 670, 521 A.2d 749 (1987) (*quoting Jackson v. State*, 52 Md.App. 327, 332 n. 5, 449 A.2d 438, *cert. denied*, 294 Md. 652 (1982). In considering the evidence presented at the suppression hearing, we extend great deference to the fact finding of the suppression hearing judge with respect to determining the credibility of the witnesses and to weighing and determining first-level facts. *Perkins v. State*, 83 Md.App. 341, 346, 574 A.2d 356 (1990). When conflicting evidence is presented, we accept the facts as found by the hearing judge unless it is shown that his findings are clearly erroneous. *Riddick v. State*, 319 Md. 180, 183, 571 A.2d 1239 (1990). But as to the ultimate, conclusionary fact of whether a search was valid, we must make our own independent constitutional appraisal

---

1. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

by reviewing the law and applying it to the facts of this case. *See Riddick v. State, supra* at 319 Md. 183, 571 A.2d 1239; *Perkins, supra* at 83 Md.App. 346, 574 A.2d 356.

Officer Darrin Anderson of the Baltimore City police presented the State's case on the suppression motion. He explained that he was on duty in a marked police car on the evening of July 14, 1990. At 10:43 p.m. he received a radio call that an armed robbery had just been committed at Popeye's restaurant, a short distance from where he was patrolling. He drove to the scene and learned that the robbery had been committed by two black men, one of whom was described as wearing a grayish sweat jacket. The second man was described as having a thin beard, a mustache and "large eyes." The witnesses further advised that the men had used a handgun and had left in a "small compact car."

The officer patrolled the area and about a half-hour after the incident came upon a Hyundai automobile, which was stopped for a traffic light located a short distance from the robbery scene. He noticed that there were three black men in the car. Officer Anderson testified that he was able to obtain a good look at the man in the back seat and noticed that he fit the description of the robber who had the beard and mustache. He also observed a gray sweatsuit laying over the headrest of the driver's seat. These observations aroused his suspicion, so he signaled the driver, who happened to be the appellant, to stop. The appellant stopped as he was directed. The officer, with his revolver drawn, approached the car and ordered the men to get out of the car. They obeyed and when they got out, he directed them to lie on the ground. At that point he frisked the men and determined that none of them was armed. He holstered his revolver, as did the backup officers, and looked inside the car.

Inside the appellant's vehicle, Officer Anderson observed a knife, which he seized. Then, he noticed a red bag on the car floor. He described the bag as a "Crown Royal little pouch." He explained that after picking it up, he "could

feel what felt like handguns inside the bag; that is when I opened up the pouch and found two revolvers loaded and extra rounds, .38 rounds." The officer said he also found in the bag some marijuana, some cocaine and some plastic baggies.

## DISCUSSION OF LAW

The appellant presents a two-pronged argument in support of his contention that the evidence found in the red bag should have been suppressed. Initially, he argues that the stop was illegal. Alternatively, he argues that the officer had no authority to search the red bag.

*The Stop*

In *Aguilar v. State*, 88 Md.App. 276, 281, 594 A.2d 1167 (1991), we explained:

In *Terry v. Ohio, supra* and the companion case of *Sibron v. New York*, 392 U.S. 40 [88 S.Ct. 1889, 20 L.Ed.2d 917] (1968), the Supreme Court ruled that police officers may stop persons when the police have specific articulable facts which, taken together with rational inferences from those facts, create reasonable suspicion that the person has been or is about to be involved in criminal conduct.

The Supreme Court has explained the term "reasonable suspicion" by saying:

Reasonable suspicion is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause.

*Alabama v. White*, 496 U.S. 325, 110 S.Ct. 2412, 2416, 110 L.Ed.2d 301 (1990).

In the matter *sub judice*, the officer knew that an armed robbery had been committed in the area about a half an hour earlier. He observed a car that matched the descrip-

tion of the get-away car. Inside the car he saw three men. The one man he could see clearly had some distinctive characteristics which were similar to the characteristics the witnesses used to describe one of the robbers. We hold that the officer had the required reasonable suspicion to effect the stop.

*The Seizure*

■ The more difficult question is whether the search of the bag was legal. We agree with appellant that the search was not conducted either as incident to an arrest or as an automobile search conducted under authority of the *Carroll* doctrine. *See Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925).

The issue here is whether Officer Anderson's conduct—picking up the bag and feeling it, then looking into the bag to verify that what he felt therein were handguns—was valid on the theory that it was authorized as part of a legitimate *Terry* frisk.

Almost twenty years ago Judge Moylan, writing for this court in *Williams v. State*, 19 Md.App. 204, 310 A.2d 593 (1973), ruled that when a police officer effects a *Terry* stop of a motorist, and in the course of the stop sees a bag on the floor of the automobile, he may, if he has reason to believe that the bag could contain a weapon, seize the bag and inspect it. In reaching this conclusion, we relied in great measure on New York case law. In line with our holding and rationale in *Williams*, the United States Supreme Court has recognized that when a police officer effects a valid *Terry* stop, the officer may be in danger of physical harm from the stopped person. Because of this threat, the Court permits police officers who make *Terry* stops to protect themselves by conducting a limited search for weapons. This limited search is usually referred to as a frisk. A frisk search is permitted only if the police officer can point to "particular facts," from which he can reasonably infer that the subject is armed and dangerous. *Payne v. State*, 65 Md.App. 566, 570, 501 A.2d 484 (1985). The

Supreme Court has categorized *Terry* searches according to the subject that is searched. To date the Court has recognized three search subjects. These subjects are: (1) the person stopped [*Terry v. Ohio, supra*]; (2) the house a person is in when he is stopped [*Maryland v. Buie*, 494 U.S. 325, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990)]; and (3) the automobile a person is in when he is stopped [*Michigan v. Long*, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983)].

The test for determining whether a search/frisk is legal depends upon what the subject is that is being searched/frisked. When the police stop a suspect in an automobile, the police are permitted to frisk the automobile provided the conditions of *Michigan v. Long* are met. *See Maryland v. Buie, supra* [494 U.S.] at 332, 110 S.Ct. at 1097.

In *Michigan v. Long, supra,* two police officers on rural patrol at night observed a speeding car. The car swerved and stopped in a ditch. The officers stopped and investigated. The driver, and only occupant of the car, exited the car; when he did, he "appeared to be under the influence of something." When the officers asked the driver for his license and registration, he did not respond, but began to walk toward his car. As he did, the officers saw a hunting knife on the floor on the driver's side of the car. The officers stopped the driver and frisked him for weapons, but found none. They then searched the interior of the car. In the course of the search the officers saw an object protruding from under an armrest. They lifted the armrest and found an open pouch. They took possession of the pouch and found marijuana in it.

In upholding the search, the Supreme Court announced the following rule:

> [T]he search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on "specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant" the officers in

believing that the suspect is dangerous and the suspect may gain immediate control of weapons. (footnote omitted, citations omitted)

*Michigan v. Long, supra* at 463 U.S. 1049, 103 S.Ct. at 3481.

Our late Chief Judge Gilbert explained this rule in *Payne v. State,* 65 Md.App. at 572, 501 A.2d 484, where he said:

The holding of *Michigan v. Long,* 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983), fully extended the reach of *Terry, Sibron, Adams* [*v. Williams,* 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972)]; and [*Pennsylvania v. Mimms* [434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977)]. Citing its concern for the "especially hazardous" nature of roadside encounters, the Court explicitly rejected the idea that *Terry* permitted only limited patdown searches of persons. *Long* declared that when an individual is properly stopped while in or beside an automobile, the entire passenger compartment of that automobile is within the "frisk" perimeter. *Long,* 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201.

In addition, Judge Moylan, writing for this court in *Derricott v. State,* 84 Md.App. 192, 578 A.2d 791 (1990), *cert. granted,* 321 Md. 633, 584 A.2d 64 (1991), explained that just as *New York v. Belton,* 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981) (for searches conducted incident to an arrest), had extended the *Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), perimeter to articles found in the passenger compartment of a car, *Michigan v. Long, supra* (for frisk conducted on authority of *Terry*), had extended the *Terry* perimeter to articles found in the passenger compartment of a car.

■ By virtue of this rule, when the police legally stop a person in an automobile, the police may "frisk" the automobile for weapons provided the police have reason to believe that a weapon is in the car, the police have reason to believe that the suspect is dangerous, and the police confine their search to areas of the passenger compartment "in which a

weapon may be placed or hidden." When in the course of such a search a container is found, the police may open and inspect the container without first patting it.

In the case before us we revisit the 1973 *Williams* case, but this time with the advantage of a considerably enlarged corpus of law. We conclude that Judge Moylan accurately predicted the future development of *Terry* stops and related automobile searches. In this case, as in *Williams*, the police had reason to suspect that the persons they had stopped had recently committed an armed robbery. This provided a basis for the officers to believe that the men they had stopped were armed and dangerous. Under these circumstances, it was reasonable for the police to suspect that the pouch contained a weapon. Thus, under the rule announced in *Michigan v. Long, supra,* the police were entitled to seize the red bag and to look inside it. We hold that the search conducted in this case was legal and that the cocaine, marijuana, and handguns recovered from the red bag were admissible.

JUDGMENTS AFFIRMED.

COSTS TO BE PAID BY APPELLANT.