693 A.2d 749

STATE of Maryland

v.

William L. SMITH.

No. 142, Sept.Term, 1995.

Court of Appeals of Maryland.

April 15, 1997.

Reconsideration Denied June 9, 1997.

Thomas K. Clancy, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on brief), Baltimore, for Petitioner.

Bradford C. Peabody, Asst. Public Defender (Stephen E. Harris, Public Defender, on brief), for Respondent.

Argued before BELL, C.J., ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI and RAKER, JJ., and ROBERT C. MURPHY, Judge (retired), Specially Assigned.

CHASANOW, Judge.

We are called upon in this case to examine the permissible scope of a protective frisk for concealed weapons during the noncustodial detention of an individual suspected of being

armed and dangerous. The specific question before the Court is whether a police officer, after patting down a suspect's outer clothing and detecting no weapons, may further verify that a suspect is unarmed by lifting the suspect's shirt to reveal the waistband of his pants. For the reasons set forth below, we hold that the police officer acted improperly in engaging in this secondary, more intrusive search.

## I.

On May 22, 1994, Baltimore Police Officer Sean White responded to a police radio broadcast that a group of individuals were selling drugs and discharging firearms at the corner of Mount and Presstman Streets in Baltimore. The radio dispatcher advised Officer White that a young, black male wearing a striped shirt had been reported as firing a weapon. Upon arriving at the scene, Officer White observed a group of four to five black men, none of whom was wearing a striped shirt. When the group dispersed, however, Officer White noticed an individual, later identified as Respondent Smith, place an object in the back waistband of his pants as he ran into nearby Mountmor Court. Although Officer White was unable to discern the precise nature of the object, he later testified that, based on the radio communication and his prior experience, he "believed that [Smith] was sticking a handgun into his waist area...."

After advising other police units of his observations, Officer White drove to a location that would enable him to intercept Smith. Upon encountering and detaining Smith, Officer White conducted a protective frisk for weapons; the frisk included a pat-down of Smith's waistband area. Detecting no weapon-like objects, Officer White then "double-checked" his pat-down by pulling Smith's shirt back to reveal the waistband. Officer White explained, "I pulled the shirt out just so I could see the waistband to make sure nothing was sticking out even though I patted him, like to double check...." At that point, a plastic bag containing cocaine fell to the ground.

Smith moved to suppress the cocaine on the grounds that Officer White lacked reasonable suspicion to detain and frisk Smith and, furthermore, exceeded the permissible scope of a protective search for weapons by lifting Smith's shirt. The Circuit Court for Baltimore City denied the motion, and after a bench trial, Smith was convicted of possession with intent to distribute cocaine. On appeal to the Court of Special Appeals, Smith argued that the trial court erred in denying his motion to suppress. The Court of Special Appeals held that, although Officer White's initial detention and pat-down of Smith was proper, the additional step of pulling back Smith's shirt exceeded the lawful bounds of a proper frisk. *Smith v. State,* 106 Md.App. 665, 678–80, 666 A.2d 883, 889–90 (1995). The intermediate appellate court explained:

"White was within the bounds of a proper *Terry* frisk when he patted-down the outer portion of the clothing that covered [Smith's] waist area. But, as already noted, White went one step further—he pulled back [Smith's] shirt. The State produced no evidence to show that, at the moment in time when White took this additional step, he continued to have reason to believe that [Smith] had a handgun in his waistband. He had patted the outer surface of [Smith's] clothing and felt nothing."

*Smith,* 106 Md.App. at 678, 666 A.2d at 889. The Court of Special Appeals thus reversed Smith's conviction. *Smith,* 106 Md.App. at 680, 666 A.2d at 890. This Court granted certiorari on the single issue of whether the intermediate appellate court was correct in holding that Officer White exceeded the permissible scope of a protective frisk. For the reasons set forth below, we affirm the judgment of the Court of Special Appeals.

## II.

This case involves a frisk for weapons in the absence of probable cause to arrest. Hence, we begin our analysis with a review of the principles established in *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). In *Terry,* the Supreme Court confronted the tension between a police offi-

cer's interest in self-protection and the Fourth Amendment's guarantee against unreasonable searches and seizures. The Supreme Court concluded that a police officer may briefly detain an individual for purposes of investigation if the officer has a reasonable, articulable suspicion that the individual is involved in criminal activity. *See Terry*, 392 U.S. at 21–24, 88 S.Ct. at 1880–81, 20 L.Ed.2d at 906–07. During the course of a permissible noncustodial detention, "if the articulable facts also support an objectively reasonable suspicion that the person with whom the officer is dealing is armed and dangerous, the officer may conduct a carefully limited [frisk] of the outer clothing of such person in an attempt to discover weapons which might be used to assault the officer." *Derricott v. State*, 327 Md. 582, 587, 611 A.2d 592, 595 (1992)(citing *Terry*, 392 U.S. at 30, 88 S.Ct. at 1884–85, 20 L.Ed.2d at 911).

The purpose of a *Terry* frisk is not to discover evidence, but rather to protect the police officer and bystanders from harm. *Terry*, 392 U.S. at 29, 88 S.Ct. at 1884, 20 L.Ed.2d at 910–11. In accordance with this narrow purpose, the scope must be "confined ... to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer." *Terry*, 392 U.S. at 29, 88 S.Ct. at 1884, 20 L.Ed.2d at 911. Furthermore, the objective is to discover weapons readily available to a suspect that may be used against the officer, not to ferret out carefully concealed items that could not be accessed without some difficulty. 4 WAYNE R. LaFAVE, SEARCH AND SEIZURE, A TREATISE ON THE FOURTH AMENDMENT § 9.5(b), at 274 (3d ed.1996). General exploratory searches are not permitted, and police officers must distinguish between the need to protect themselves and the desire to uncover incriminating evidence.

The Supreme Court noted approvingly in *Terry* that the police officer had "confined his search strictly to what was minimally necessary," a pat-down of the suspects' outer clothing. 392 U.S. at 30, 88 S.Ct. at 1884, 20 L.Ed.2d at 911. In most instances, a pat-down is indeed a proper, minimally

intrusive means of determining whether a suspect is armed. The Supreme Court has recognized, however, that the reasonableness of a *Terry* frisk depends on the factual circumstances of each case. *Id.; see also Adams v. Williams,* 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972). Under certain conditions, more intrusive means of "frisking" may be justified.

For example, a more intrusive *Terry* frisk may be constitutionally permissible in the rare instance where a police officer is unable to perform an effective pat-down, as demonstrated in *Adams, supra.* In *Adams,* a police officer approached a vehicle occupied by an individual who, according to an informant, had narcotics in his possession and a gun concealed at his waist. 407 U.S. at 144–45, 92 S.Ct. at 1922, 32 L.Ed.2d at 616. Although the police officer asked the suspect to open the car door, the individual instead lowered the window. *Adams,* 407 U.S. at 145, 92 S.Ct. at 1922–23, 32 L.Ed.2d at 616. At that point, the police officer reached into the car and removed the gun from the individual's waistband. *Adams,* 407 U.S. at 145, 92 S.Ct. at 1923, 32 L.Ed.2d at 616. Although the seizure of the gun was not preceded by a pat-down and was clearly more intrusive than a pat-down, the Supreme Court found that the police officer had acted reasonably, explaining that:

> "When [the suspect] rolled down his window, rather than complying with the policeman's request to step out of the car so that his movements could more easily be seen, the revolver allegedly at [the suspect's] waist became an even greater threat. Under these circumstances the policeman's action in reaching to the spot where the gun was thought to be hidden constituted a limited intrusion designed to insure his safety, and we conclude that it was reasonable."

*Adams,* 407 U.S. at 148, 92 S.Ct. at 1924, 32 L.Ed.2d at 618.

We do not interpret *Adams* as authorizing police officers to dispense with a pat-down merely because they have reason to believe that a weapon is concealed at a particular location on a suspect's person. *See* 4 WAYNE R. LAFAVE, SEARCH AND SEIZURE, A TREATISE ON THE FOURTH AMENDMENT § 9.5(b), at 272 (3d ed.1996). Rather, we adopt the view that

the more intrusive search in *Adams* was justified by the suspect's failure to comply with the officer's directive and the resulting inability of the officer to conduct an effective pat-down. *Id.* Under those circumstances, the police officer remained within the bounds of "what was minimally necessary" to ensure his protection.

Courts in other jurisdictions have recognized the validity of *Terry* frisks, extending beyond a mere pat-down, in situations analogous to *Adams.* For example, other courts have held that a police officer may dispense with a pat-down and immediately search a suspect's pockets where the suspect prevents the officer from conducting a pat-down by grabbing the officer's hands or backing away from the officer when the officer attempts to touch a bulge in the suspect's clothing. *See State v. Kearney,* 183 N.J.Super. 13, 443 A.2d 214 (1981), *cert. denied,* 89 N.J. 449, 446 A.2d 169 (1982). Similarly, a protective search may extend to brushing a suspect's hand aside and reaching into a suspect's pocket where the suspect suddenly or furtively thrusts his hands into his pocket as if reaching for a weapon, *see State v. Alesso,* 328 N.W.2d 685 (Minn.1982), or where the suspect's clothing is so bulky that an effective pat-down is impossible, *see State v. Vasquez,* 167 Ariz. 352, 807 P.2d 520 (1991). Where the police officer observes a triangular-shaped bulge underneath a suspect's shirt, it has been held that the officer may direct the suspect to lift his shirt above the bulge; this approach "minimize[s] the risk that [the suspect] could draw his weapon before [the officer] could attempt to neutralize the potential threat" and "involve[s] a limited intrusion upon [the suspect's] personal security." *U.S. v. Baker,* 78 F.3d 135, 138 (4th Cir.1996). Furthermore, if a police officer has reason to believe that a suspect may have concealed a weapon in his hand, some courts have held that the officer may force open the suspect's hand. *See State v. Williams,* 249 Neb. 582, 544 N.W.2d 350 (1996); *see also People v. Shackelford,* 37 Colo.App. 317, 546 P.2d 964 (1976)(finding police officer's scuffle with suspect until contents of hand were exposed reasonable where suspect refused to show the officer what he was holding). In each of these

cases, extenuating circumstances placed the officer's safety in such jeopardy that alternative means of determining whether the suspect was armed were justified and reasonable.

This Court relied upon similar reasoning to uphold the constitutionality of a "hard take down" stop in *Lee v. State,* 311 Md. 642, 537 A.2d 235 (1988). In *Lee,* police officers had a reasonable and articulable suspicion that a pistol was concealed in a gym bag located within a few feet of the individuals whom they sought to detain. 311 Md. at 657, 537 A.2d at 242. With weapons drawn, six police officers rushed toward the suspects, ordering them to lie face-down on the ground. *Lee,* 311 Md. at 651, 537 A.2d at 239. In upholding the constitutionality of this aggressive method of detaining the individuals, we observed that it would have been impossible for the officers to approach the suspects without being detected. *Lee,* 311 Md. at 662, 537 A.2d at 244. As a result, the suspects might have been able to reach for the pistol in the nearby bag. *Id.* Under these circumstances, it was reasonable for the police officers to minimize the risk to their safety by a show of force; "the police not only made it more difficult for [the suspects] to reach for the bag but also put the . . . bystanders in that position which would be safest, relatively speaking, if [the suspects] began shooting." *Lee,* 311 Md. at 666–67, 537 A.2d at 247.

The reasonableness of a *Terry* stop and frisk thus must be assessed on a case-by-case basis. In any event, the proper balance between the sometimes competing interests of the police officer and the individual requires that the police officer employ the least intrusive means of discovering and neutralizing any concealed weapons. While a pat-down of the outer surface of a suspect's clothing is typically the least intrusive method, a more intrusive frisk may be warranted in the appropriate circumstance. Hence, the mere fact that the police officer in the instant case looked beneath Smith's outer clothing does not necessarily render the frisk unreasonable; rather, the circumstances under which this further intrusion occurred dictate the result in this case.

### III.

■ Officer White had a reasonable, articulable suspicion that Smith was armed and dangerous,[1] and thus was entitled to engage in a minimally intrusive frisk for concealed weapons. *See Terry*, 392 U.S. at 21–24, 88 S.Ct. at 1880–81, 20 L.Ed.2d at 906–07. Upon encountering Smith, Officer White conducted a pat-down of Smith's exterior clothing. This initial frisk was clearly proper. Officer White testified, however, "[w]hen I patted [Smith] down, I didn't feel anything."

■ The fact that Officer White detected nothing in patting down Smith is crucial to the decision in this case. The right of a police officer to conduct a *Terry* frisk is predicated on a reasonable, articulable suspicion that the individual is armed and dangerous. *Derricott*, 327 Md. at 588, 611 A.2d at 595. By patting down a suspect's outer clothing, a police officer engages in a minimally intrusive verification of that suspicion. Where the pat-down reveals a hard object that the police officer reasonably believes may be a weapon, the officer may further intrude upon the individual to the extent necessary to seize the suspected weapon. *Terry*, 392 U.S. at 30–31, 88 S.Ct. at 1884–85, 20 L.Ed.2d at 911. If a pat-down reveals no weapon-like objects, however, the risk of harm to the officer is no longer of sufficient magnitude to outweigh the individual's competing interest in personal security, and the police officer may not further intrude upon the suspect. *Aguilar v. State*, 88 Md.App. 276, 285, 594 A.2d 1167, 1171 (1991); *see also* 4 WAYNE R. LAFAVE, SEARCH AND SEIZURE, A TREATISE ON THE FOURTH AMENDMENT § 9.5(c), at 276–80 (3d ed.1996).

Illustrative of the importance of the nature of the object detected during a *Terry* frisk is the Supreme Court's decision in *Minnesota v. Dickerson*, 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993). In *Dickerson*, a police officer detected no weapon-like objects during the course of a protective *Terry*

---

1. The Court of Special Appeals held that Officer White had reason to believe that Smith was armed and dangerous. The validity of that conclusion is not before this Court.

frisk. 508 U.S. at 367–69, 113 S.Ct. at 2133, 124 L.Ed.2d at 341. The frisk did reveal, however, "a small lump" in the suspect's pocket. *Id.* After " 'squeezing, sliding and otherwise manipulating' " the lump, the officer concluded that it was crack cocaine and retrieved it from the pocket. *Dickerson,* 508 U.S. at 377–78, 113 S.Ct. at 2138, 124 L.Ed.2d at 347 (quoting *State v. Dickerson,* 481 N.W.2d 840 (Minn.1992)). Although the Court recognized that a police officer may properly seize "nonthreatening contraband" detected during a *Terry* frisk, it nevertheless found the particular search at issue constitutionally invalid. *Dickerson,* 508 U.S. at 373–75, 377–80, 113 S.Ct. at 2136, 2138–39, 124 L.Ed.2d at 344, 347–48. The Court explained:

> "[T]he officer's continued exploration of respondent's pocket after having concluded that it contained no weapon was unrelated to '[t]he sole justification of the search [under Terry:] . . . the protection of the police officer and others nearby.' It therefore amounted to the sort of evidentiary search that Terry expressly refused to authorize. . . .
>
> * * *
>
> Although the officer was lawfully in a position to feel the lump in respondent's pocket, because Terry entitled him to place his hands upon respondent's jacket, . . . **the incriminating character of the object was not immediately apparent to him. Rather, the officer determined that the item was contraband only after conducting a further search, one not authorized by Terry or by any other exception to the warrant requirement.**"

508 U.S. at 379, 113 S.Ct. at 2139, 124 L.Ed.2d at 347–48 (citation omitted) (emphasis added).

Applying these principles to the facts of the instant case, we conclude that when Officer White failed to detect a weapon-like object, his frisk of Smith should have ceased. Instead, Officer White stated that he decided to "double check" the pat-down. He testified, "I pulled [Smith's] shirt back to make sure I didn't miss anything." He further explained, "I pulled

the shirt out just so I could see the waistband to make sure nothing was sticking out even though I patted him, like to double check...." The trial judge also found that upon completing the initial pat-down, "the officer did one more thing, which was to tug at the shirt...." In verifying the results of the pat-down by a more intrusive search, Officer White exceeded the lawful bounds of a *Terry* frisk.

The Court of Special Appeals reached a similar conclusion in *Aguilar, supra.* In *Aguilar,* a police officer felt nothing when he frisked the appellant for concealed weapons. 88 Md.App. at 287, 594 A.2d at 1172. Despite the lack of any indication from the pat-down that the appellant was armed, the officer continued his search by removing the appellant's pants and underclothing. *Aguilar,* 88 Md.App. at 280, 594 A.2d at 1169. In holding that the officer exceeded the scope of a valid *Terry* frisk, the intermediate appellate court explained:

> "if the frisk reveals only a soft object, a hard object which the officer can determine is not a weapon, or a hard object which cannot be determined to be a weapon, further search is prohibited unless the officer either observes conduct which leads him to believe the suspect is armed and dangerous or has some other reliable basis for believing that the suspect is armed and dangerous."

*Aguilar,* 88 Md.App. at 287, 594 A.2d at 1172. Because the officer, subsequent to the pat-down, had no further reason to suspect that the appellant was armed, further intrusion upon the appellant was prohibited. *Aguilar,* 88 Md.App. at 287, 594 A.2d at 1173.

The same principle applies to the conduct of Officer White in this case. Upon feeling nothing in patting down Smith, Officer White no longer had the same suspicion that Smith was armed and dangerous, and thus had no legal basis for escalating his search. As the intermediate appellate court has observed, "the right to conduct a *Terry* [frisk] does not give the police the right to make absolutely sure that no weapon is present." *Aguilar,* 88 Md.App. at 286, 594 A.2d at 1172.

In sum, a *Terry* frisk must be limited to the least intrusive means of determining whether a suspect is armed. Officer White remained within the confines of *Terry* by limiting his initial intrusion to a pat-down of Smith's outer clothing. In verifying the accuracy of this initial pat-down by a secondary, more intrusive search, however, Officer White exceeded the permissible scope of a protective frisk. The incriminating evidence seized during the course of this unconstitutional search thus should have been suppressed. The judgment of the Court of Special Appeals reversing Smith's conviction is affirmed.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED, AND CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO REMAND THIS CASE TO THE CIRCUIT COURT FOR BALTIMORE CITY FOR A NEW TRIAL. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY THE MAYOR AND CITY COUNCIL OF BALTIMORE.*

RODOWSKY, KARWACKI, and RAKER, JJ., dissent.

RAKER, Judge, dissenting.

I would reverse the judgment of the Court of Special Appeals and affirm the judgment of the trial court. Officer White's actions were reasonably related in scope to the circumstances which justified the encounter with Petitioner in the first place, and, therefore, his pat-down of Smith was reasonable.

I agree with the conclusion of Judge Garrity in his dissenting opinion that "[i]f a suspect, while fleeing from a police officer responding to the report of a discharge of weapons in a high crime area, is seen to place an object that the officer believes to be a handgun into his waistband, the police officer ought to be allowed to conduct a thorough protective pat-down search of that particular area on stopping the suspect, even though a mere cursory pat-down failed to reveal the object that had been in fact tucked into a shirt-covered waistband in

back of appellant's pants." *Smith v. State*, 106 Md.App. 665, 680–81, 666 A.2d 883, 890 (1995) (Garrity, J., dissenting).

The majority recognizes that the reasonableness of a *Terry* stop must be assessed on a case-by-case basis. Maj. op. at 468. The majority also recognizes that Officer White had a reasonable, articulable suspicion that Smith was armed and dangerous, and thus was entitled to engage in a minimally intrusive frisk for concealed weapons. *Id.* at 469. The majority reasons, however, that once the officer conducted a pat-down and detected nothing, "the risk of harm to the officer is no longer of sufficient magnitude to outweigh the individual's competing interest in personal security, and the police officer may not further intrude upon the suspect." *Id.* at 469. The majority concludes that "upon feeling nothing in patting down Smith, Officer White no longer had the same suspicion that Smith was armed and dangerous, and thus had no legal basis for escalating his search." *Id.* at 471. The majority then holds that "when Officer White failed to detect a weapon-like object, his frisk of Smith should have ceased." *Id.* at 470. I disagree.

The authority of the police officer to protect himself from harm from an individual that he reasonably believes is armed is not so limited. Simply because the officer did not detect a weapon during a "cursory" pat-down does not inevitably lead to the conclusion that the officer "had no further reason to suspect that the appellant was armed." *Id.* at 471. A police officer's interest in self-protection arises when he reasonably believes that a suspect is armed and dangerous. At that point, as the Supreme Court noted in *Terry*, the officer has an interest in "taking steps to assure himself that the person with whom he is dealing is not armed with a weapon that could unexpectedly and fatally be used against him." *Terry v. Ohio*, 392 U.S. 1, 23, 88 S.Ct. 1868, 1881, 20 L.Ed.2d 889, 907 (1968). I find no support for the "one time and you're out" rule that the majority seems to fashion. An officer should be permitted to "double-check" to determine whether a suspect is armed and to minimize any risk to his or her safety.

Certainly, the right to frisk has limitations and not every pat-down justifies an intrusion beneath the surface of the suspect's outer clothing. Indeed, the majority does not seem to quarrel with the right of the officer, under certain circumstances, to conduct a limited pat-down beyond the suspect's outer clothing. Maj. op. at 468–469. The majority's objection is addressed to the officer's conduct in "verifying the results of the pat-down by a more intrusive search." *Id.* at 471. Here, however, the more thorough pat-down was warranted. Officer White's experience, combined with the earlier report of the discharge of a weapon and his observations of Smith, led him to believe that Smith was armed and dangerous. Even though the officer did not feel anything hard during the initial, cursory pat-down, the follow-up action of the officer was reasonable. The facts of this case justify the subsequent limited intrusion. Officer White was investigating the report of drug dealers and the discharge of a firearm on a street corner. He saw Smith place something in the back of his waistband that he believed was a handgun. The initial cursory pat-down did not dissipate his reasonable fear that Smith was armed.

Officer White, testifying on behalf of the State at the hearing on the motion to suppress, described his encounter with Petitioner. The officer said:

> I approached him from the front for my safety. I asked him to place his hands up where I could see them. At that time I detained him.... At that time I did a pat—a stop and frisk pat down for my safety in the back of his waist area where I had seen him place an object. At that time I pulled out his shirt to check under it at which time the object fell to the ground.

Following this testimony, the State qualified the officer as an expert in the "sub-area of narcotics trafficking, particularly in the use of the handgun in the narcotics trafficking as a street level dealer." The officer, as an expert as well as a fact witness, testified that he believed that Petitioner was "placing a weapon in the back of his waistband, the waist of his pants, or an object, some type of object he was placing in the back of

his pants." Upon further inquiry from the court, the officer said that he believed that the object was possibly a weapon. He then said:

> When I approached him, I asked him to—if I could see his hands for officer's safety at which time I went up and conducted a pat-down for my safety. If the defendant did have a weapon, I wanted to know about it and recover it for my safety.

The judge then asked the officer:

> [W]hat was the purpose of the technique where you sort of tugged at the shirt of the waistband which caused something to fall out? Is that a specific kind of technique that you learned in the academy or something?"

The officer responded:

> No, your honor, when I went up and I went to perform my stop and frisk, the shirt was over the waistband. Basically, what I did is as I patted it, I pulled the shirt out just so I could see the waistband to make sure nothing was sticking out even though I had patted him, like to double check, and as I tucked the shirt back to see the waistband, that's when the object fell out.

On cross-examination, defense counsel asked the officer: "And you did *a cursory pat-down* of his belt area?" The officer responded in the affirmative and said:

> When I patted him down, I didn't feel anything. That's when I got to the back, I just double checked and pulled his shirt back to make sure I didn't miss anything.

To be sure, "[g]eneral exploratory searches are not permitted, and police officers must distinguish between the need to protect themselves and the desire to uncover incriminating evidence." Maj. op. at 465. In this case, however, the officer could not have been more explicit that the subsequent pat-down was to protect himself and not to uncover incriminating evidence. Based on what he had observed earlier, he believed Petitioner had possibly placed a weapon in his waistband. For his own safety, he double-checked the waistband.

The trial judge, who saw and heard the witnesses, found that, after completing the "very cursory, short search," Officer White "tug[ged] at the shirt to see if tugging at the shirt would reveal the outline of a gun. . . ." This statement by the trial judge may be interpreted as a finding of fact that the officer pulled the shirt taut to see if the outline of a gun would be revealed. The tugging at the shirt, a limited, additional intrusion, is, in my view, reasonable under all of the circumstances.

The Supreme Court, in *Terry,* adopted a flexible model in assessing the reasonableness of an official intrusion upon an individual's protected interest. The Court recognized that there is no ready test to determine reasonableness other than balancing the need to search against the invasion which the search entails. *Terry v. Ohio,* 392 U.S. 1, 21, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889, 905 (1968). Specifically, the Court stated:

> We need not develop at length in this case, however, the limitations which the Fourth Amendment places upon a protective seizure and search for weapons. These limitations will have to be developed in the concrete factual circumstances of individual cases. . . . The sole justification of the search in the present situation is the protection of the police officer and others nearby, and it must therefore be confined in scope to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer.

*Id.* at 29, 88 S.Ct. at 1884, 20 L.Ed.2d at 910–11 (citations omitted). In assessing the reasonableness of the governmental intrusion, the Court said: " '[T]he permissibility of a particular law enforcement practice is judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests.' " *United States v. Villamonte–Marquez,* 462 U.S. 579, 588, 103 S.Ct. 2573, 2579, 77 L.Ed.2d 22, 30 (1983) (quoting *Delaware v. Prouse,* 440 U.S. 648, 654, 99 S.Ct. 1391, 1396, 59 L.Ed.2d 660, 667–68 (1979)). The individual's interest to be free from arbitrary interference by officers must be balanced against the

weighty interest in officer safety. *See Maryland v. Wilson,* —— U.S. ——, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997).

The majority eschews the flexible approach set forth by the Supreme Court in favor of a bright-line rule, stating:

> If a pat-down reveals no weapon-like objects, however, the risk of harm to the officer is no longer of sufficient magnitude to outweigh the individual's competing interest in personal security, and the police officer may not further intrude upon the suspect.

Maj. op. at 469. This approach reintroduces the rigidity condemned in *Terry.* The law does not require a police officer to risk bodily harm or death when the circumstances confronting that officer lead the officer to believe that his or her safety is in danger.

RODOWSKY and KARWACKI, JJ., join in the views expressed in this dissent.