**STATE v. SMITH**

[150 N.C. App. 317 (2002)]

STATE OF NORTH CAROLINA v. CORNELIUS KEITH SMITH

No. COA01-836

(Filed 21 May 2002)

**Evidence— motion to suppress—cocaine**

The trial court did not err in an intent to sell and deliver cocaine case under N.C.G.S. § 90-95 by denying defendant's motion to suppress evidence of cocaine seized in a non-consensual search that went beyond a pat-down of defendant's clothing after the stop of a vehicle in which defendant was a passenger, because the officer's action in lifting defendant's shirt under the specific circumstances of this case was reasonably related to the events that took place when: (1) the officer recognized defendant from multiple court proceedings, including a shooting; (2) the officer recognized defendant from photographs in police safety bulletins; (3) defendant consistently covered his pants pocket with his hand as if attempting to hide something; (4) defendant appeared uneasy and became more nervous when the officer asked for permission to search the car; (5) once defendant's hand was moved, the officer saw a bulge in defendant's pants that was slightly smaller than a tennis ball; (6) once the officer moved defendant's hand and saw the bulge, defendant appeared anxious and moved his feet and shifted as if he were sizing up the situation; and (7) the officer was concerned that defendant might have a weapon in his pocket.

Judge TIMMONS-GOODSON dissenting.

Appeal by defendant from judgment entered 6 March 2001 by Judge D. Jack Hooks, Jr. in Brunswick County Superior Court. Heard in the Court of Appeals 23 April 2002.

*Attorney General Roy A. Cooper, III, by Assistant Attorney General Marvin R. Waters, for the State.*

*A. Michelle FormyDuval for defendant-appellant.*

HUNTER, Judge.

Cornelius Keith Smith ("defendant") appeals the trial court's denial of his motion to suppress. We affirm.

The following is a summary of the pertinent facts and procedural history. On 4 August 2000, Officer Loren Lewis, a sergeant with the

Oak Island Police Department, participated in the stop of a motor vehicle pursuant to a road block to check drivers for intoxication. Officer Lewis immediately recognized both the driver of the vehicle, Bria Bishop, and defendant, who was sitting in the front passenger seat. Officer Lewis testified that he had been "dealing with Ms. Bishop . . . since she was a juvenile" and that she had not been cooperative in his prior experiences with her. He also testified that he recognized defendant:

> I had seen the Defendant previously in court, in District Court and Superior Court for—if I recall correctly, one incident was a shooting and also his face has been on photographs that have come across my desk as officer—kind of an officer safety bulletin or such.

According to Officer Lewis, upon stopping the vehicle, defendant

> seemed to be uneasy. He—he had his hand in between the seat and the door. He was looking straight ahead and trying not to turn, you know, away or towards us. He had his other hand on his leg just kind of looking left to right[,] kind of nervous acting.

Bishop voluntarily consented to a search of the car, at which point, according to Officer Lewis, defendant's demeanor changed:

> He just seemed to get more nervous whenever I talked to him. He darted toward—or turned his face toward her. You know, I said, "What are you doing?" He just turned directly. She turned back and there was a couple of gazes back and forth but no words spoken, just kind of shaky.

Because defendant had his hand by his leg, and based on what Officer Lewis knew about defendant and his history, Officer Lewis became concerned that there might be a weapon in the car. He then asked Bishop and defendant to exit the car.

A deputy sheriff took control of Bishop while Officer Lewis watched over defendant. According to Officer Lewis, defendant "had his right hand pushed against his front right pocket as if he was concealing or covering something." Officer Lewis then took hold of defendant's right hand and pulled it away from defendant's body. Officer Lewis observed a bulge in defendant's right front pocket, which was slightly smaller than a tennis ball. However, defendant was wearing a long, "heavy canvas type shirt" which covered defendant's

pants pocket, preventing Officer Lewis from directly viewing the outside of the pants pocket.

Officer Lewis asked Detective Vining, who was assisting him, to take defendant's left hand. Officer Lewis testified that his primary concern at this point was that defendant might have a weapon in his pocket. According to Officer Lewis, during this time defendant

> was kind of moving his feet shifting, not really pulling away from us but kind of moving into a position that he could take flight, in my opinion. He would turn and kind of—just moving different directions trying to see which way—he was looking around to see who was behind him, looking to see who was holding on to him, more or less sizing up the situation.

Officer Lewis then lifted up defendant's shirt and, without entering defendant's pants pocket, was immediately able to observe a large plastic bag containing cocaine. Officer Lewis took possession of the cocaine and placed defendant in handcuffs. He then conducted a full pat-down of defendant because he was "still concerned that he may have a weapon on him based on what I knew about him."

Defendant was indicted and charged with one count of possession with intent to sell and deliver five grams of cocaine, pursuant to N.C. Gen. Stat. § 90-95 (1999). Defendant moved to suppress the cocaine as evidence on the grounds that the search and seizure which produced the evidence constituted a violation of his constitu-' tional rights. A hearing was conducted on 3 January 2001 consisting only of the testimony of Officer Lewis. Following Officer Lewis' testimony, defendant argued that Officer Lewis' conduct extended beyond the permissible scope of a *Terry* frisk for weapons. *See Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889 (1968). The State conceded that by lifting up defendant's shirt, Officer Lewis did commit a "slight violation of the *Terry* frisk." However, the State contended that Officer Lewis' conduct was permissible given: that Officer Lewis was familiar with Bishop, who had been uncooperative in the past; that Officer Lewis was familiar with defendant's "previous violent behavior" because Officer Lewis had "seen flyers come across [his] desk warning officers about this Defendant"; and that defendant appeared nervous.

At the close of the hearing, the trial court made the following pertinent findings of fact in open court:

STATE v. SMITH

[150 N.C. App. 317 (2002)]

And that while the officer was talking with the driver, [defendant] kept making movements with his hands around a pants pocket.

Upon being removed from the vehicle, the Defendant acted nervous, looked around, and continued to hold his hand in front of the pocket as if to conceal something.

That the officer was familiar with the Defendant, both as a prior defendant and as a person who could be dangerous to police officers.

The officer became concerned for his safety and conducted a search of the area of the pocket by simply raising the shirt to determine whether something was in the pocket or not. At which point, he found in plain view the cocaine.

The trial court concluded as a matter of law that the search did not violate defendant's constitutional rights, and therefore denied defendant's motion to suppress. Following the denial of his motion to suppress, defendant pled guilty and judgment was entered against him. Pursuant to N.C. Gen. Stat. § 15A-979(b) (1999), defendant preserved his right to appeal the judgment against him based upon the denial of the motion to suppress.

On appeal, defendant contends that the trial court erred in denying the motion to suppress. Our review of a motion to suppress is limited to a determination of whether the trial court's findings of fact are supported by competent evidence, and whether those findings in turn support the trial court's conclusions of law. *State v. Willis*, 125 N.C. App. 537, 540, 481 S.E.2d 407, 410 (1997).

Defendant does not challenge the stop of the vehicle in which defendant was a passenger. Nor does defendant argue that Officer Lewis would have been prohibited from conducting a pat-down of defendant's outer clothing. Rather, defendant challenges the manner of the search of defendant which produced the cocaine that formed the basis for the charge against him.

[S]earches and seizures " 'conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well delineated exceptions.' " One such exception was recognized in Terry v. Ohio, which held that "where a police officer observes unusual conduct which leads

**STATE v. SMITH**

[150 N.C. App. 317 (2002)]

him reasonably to conclude in light of his experience that criminal activity may be afoot . . . [,]" the officer may briefly stop the suspicious person and make "reasonable inquiries" aimed at confirming or dispelling his suspicions.

Terry further held that "[w]hen an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others," the officer may conduct a patdown search "to determine whether the person is in fact carrying a weapon." "The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence . . . ." Rather, a protective search—permitted without a warrant and on the basis of reasonable suspicion less than probable cause—must be strictly "limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby." If the protective search goes beyond what is necessary to determine if the suspect is armed, it is no longer valid under Terry and its fruits will be suppressed.

*Minnesota v. Dickerson*, 508 U.S. 366, 372-73, 124 L. Ed. 2d 334, 343-44 (1993) (citations omitted). Similarly, this Court has held:

In the context of most "investigatory stops," police officers may perform only a limited frisk, or pat-down, of a suspect to discover any weapons which might be present. This limited frisk may take place, "[i]f, after the detention, [the investigating officer's] personal observations confirm his apprehension that criminal activity may be afoot and [] that the person may be armed . . . ." In such a situation, the limited frisk is a function of "self-protection."

*Willis*, 125 N.C. App. at 542, 481 S.E.2d at 411 (citations omitted).

A *Terry* frisk generally contemplates a limited pat-down of the outer clothing of an individual. *See, e.g., State v. Beveridge*, 112 N.C. App. 688, 693-95, 436 S.E.2d 912, 915-16 (1993), *affirmed*, 336 N.C. 601, 444 S.E.2d 223 (1994). Defendant contends, and the State appears to concede, that Officer Lewis' conduct in lifting defendant's shirt to expose the pocket of his pants without defendant's consent extended beyond the scope permissible pursuant to a *Terry* frisk. Thus, the question here is whether the circumstances were sufficient to warrant a search beyond that allowed pursuant to a *Terry* frisk.

Whether a non-consensual search that goes beyond a pat-down of the outer clothing is improper requires a court to determine "whether

the degree of intrusion [was] reasonably related to the events that took place." *State v. Watson*, 119 N.C. App. 395, 398, 458 S.E.2d 519, 522 (1995).

> "In determining whether or not conduct is unreasonable, '[t]here is no slide-rule formula,' and '[e]ach case must turn on its own relevant facts and circumstances.' In determining reasonableness, courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted."

*Id.* at 399, 458 S.E.2d at 522 (citations omitted).

Here, the record indicates that Officer Lewis was presented with the following circumstances: (1) he recognized defendant from multiple court proceedings, one of which involved "a shooting"; (2) he also recognized defendant from photographs in police safety bulletins; (3) defendant consistently covered his pants pocket with his hand as if attempting to hide something; (4) defendant appeared "uneasy" and became more nervous when Officer Lewis asked for permission to search the car; (5) once defendant's hand was moved, Officer Lewis saw a bulge in defendant's pants that was slightly smaller than a tennis ball; (6) once Officer Lewis moved defendant's hand and saw the bulge, defendant appeared anxious and moved his feet and shifted as if he were "sizing up the situation"; and (7) Officer Lewis was concerned that defendant might have a weapon in his pocket. It was at this point that Officer Lewis lifted defendant's long, "heavy canvas type shirt" to expose the outside of defendant's pants pocket. Officer Lewis did not have to reach inside of defendant's pocket in order to discover the cocaine. Moreover, Officer Lewis still conducted a pat-down search of defendant, even after lifting his shirt and removing the cocaine, which fact indicates that Officer Lewis was not impermissibly seeking to discover evidence in lifting defendant's shirt, but rather was seeking to determine whether defendant was in possession of a weapon. The trial court entered findings consistent with these facts, which findings were supported by the evidence presented at the hearing. Based upon these findings, the trial court concluded that defendant's constitutional rights had not been violated and denied the motion to suppress.

We hold that the trial court did not err in concluding that Officer Lewis' action in lifting defendant's shirt, under the specific circumstances here, was "reasonably related to the events that took place." *Watson*, 119 N.C. App. at 398, 458 S.E.2d at 522; *see U.S. v. Edmonds*,

948 F. Supp. 562, 565-66 (E.D. Va. 1996) (where defendant, seen standing next to a parked car with lights and engine off in tow-away zone in high-crime area at 10:30 p.m., acted nervous in response to police officer's request that he lift his shirt, officer did not exceed permissible scope of weapons search under *Terry* in drawing his weapon and lifting defendant's shirt), *affirmed*, 149 F.3d 1171 (4th Cir.), *cert. denied*, 525 U.S. 912, 142 L. Ed. 2d 212 (1998). Thus, we affirm the trial court's order denying the motion to suppress.

Affirmed.

Judge GREENE concurs.

Judge TIMMONS-GOODSON dissents in a separate opinion.

TIMMONS-GOODSON, Judge, dissenting.

Because I conclude that Officer Lewis' actions in exceeding the permissible scope of a *Terry* search are not justified under the circumstances presented by the instant case, I respectfully dissent from the majority opinion. I would hold that, because Officer Lewis' act of lifting defendant's shirt without first performing a pat-down to ascertain the presence of a weapon constituted an unreasonable search, the trial court erred in denying his motion to suppress.

The majority opinion agrees with both parties that Officer Lewis' conduct extended beyond the scope of a permissible search pursuant to *Terry*. *Terry* authorized only a "carefully limited search of the outer clothing" for weapons. *Terry*, 392 U.S. at 30, 20 L. Ed. 2d at 911. Nothing in *Terry* or its progeny permits a law enforcement officer conducting a *Terry* frisk to routinely remove or lift an outer layer of clothing, or a clothing accessory, in order to search beneath such clothing or accessory. This is because the purpose of permitting a limited pat-down search is not to discover evidence, but rather to allow a law enforcement officer to determine whether a defendant is in possession of a weapon. *See id.* at 29, 20 L. Ed. 2d at 910-11. A search for weapons must be narrow in scope and limited to that which is necessary for the discovery of weapons that are readily accessible. *See id.* at 26, 29, 20 L. Ed. 2d at 909-11. It is well established that " 'investigative methods employed [during an investigative search] should be the least intrusive means reasonably available to verify or *dispel the officer's suspicion* in a short period of time.' " *State v. Allison*, 148 N.C. App. 702, 706, 559 S.E.2d 828, 831 (2002)

(quoting *Florida v. Royer*, 460 U.S. 491, 500, 75 L. Ed. 2d 229, 238 (1983)) (alteration in original).

Although the majority opinion sets forth the circumstances surrounding Officer Lewis' search of defendant in great detail, it offers no explanation as to why Officer Lewis could not have first conducted a *Terry* frisk of defendant to determine whether the bulge in defendant's pocket was a weapon or other dangerous object. As such, the majority opinion presents no valid justification for Officer Lewis' actions in lifting defendant's shirt without first performing a limited pat-down search of defendant's outer clothing. Had Officer Lewis conducted such a pat-down, he would have likely concluded, from feeling the soft bulge in defendant's pocket, that defendant was not concealing a weapon. At that point, one of two avenues was open to Officer Lewis. First, had Officer Lewis been able to conclude with certainty, from his experience, that the bulge he felt in defendant's pocket was illegal contraband, he would have been entitled to seize it. *See, e.g., State v. Beveridge*, 112 N.C. App. 688, 694-95, 436 S.E.2d 912, 915-16 (1993), *affirmed*, 336 N.C. 601, 444 S.E.2d 223 (1994). Alternatively, had Officer Lewis been unable to conclude that the bulge was contraband, he would not have been entitled to engage in any further intrusion upon defendant, and he would not have been justified in lifting defendant's shirt in order to view the outside of defendant's pants pocket as he did here. *See State v. Smith*, 345 Md. 460, 469, 693 A.2d 749, 753 (1997) (warning that, "[i]f a pat-down reveals no weapon-like objects . . . the risk of harm to the officer is no longer of sufficient magnitude to outweigh the individual's competing interest in personal security, and the police officer may not further intrude upon the suspect").

Courts in other jurisdictions addressing the issue of searches conducted without the benefit of an initial pat-down have generally concluded that such searches violate the Fourth Amendment. *See, e.g., State v. Isidore*, 789 So.2d 79, 86 (La.App. 4 Cir. 2001) (concluding that a deputy's action in removing a baseball cap from the defendant's head and shaking it out exceeded the scope of a permissible *Terry* pat-down search); *Jamison v. State*, 455 So.2d 1112, 1114 (Fla.App. 4 Dist. 1984) (determining that a search beneath clothing is unauthorized unless a pat-down of outer clothing is first conducted that indicates the presence of a concealed weapon, because a pat-down might reveal that the suspicious bulge is soft and could not be a weapon), *cert. denied*, 469 U.S. 1127, 83 L. Ed. 2d 804 (1985); *United States v. Hairston*, 439 F. Supp. 515, 519 (N.D. Ill. 1977) (holding that,

**STATE v. SMITH**

[150 N.C. App. 317 (2002)]

where the officer stopped the defendant for a traffic violation, recognized him as being recently released from prison, and noticed a bulge in the defendant's trousers, the officer's act of reaching into the defendant's pants and pulling out a pistol without first conducting a pat-down was an unreasonable search and beyond that minimally necessary to insure safety); *Smith*, 345 Md. at 470, 693 A.2d at 754 (holding that the officer exceeded the scope of a permissible *Terry* search where, after an initial pat-down disclosed no weapons, the officer pulled the defendant's shirt up and discovered cocaine concealed in the waistband of the defendant's pants); *People v. Aviles*, 21 C.A.3d 230, 234, 98 Cal.Rptr. 316, 318-19 (1971) (concluding that an officer's conduct in reaching inside the defendant's coat and seizing a bag of marijuana was an impermissible intrusion where the officer failed to first conduct a *Terry* pat-down).

In contrast, cases in which courts have permitted intrusion by a law enforcement officer without requiring an initial pat-down tend to involve additional exigent circumstances creating an increased risk to the officer. *See, e.g., U.S. v. Baker*, 78 F.3d 135, 138 (4th Cir. 1996) (holding that the officer's act of directing the defendant to raise his shirt, which revealed a handgun, was reasonable under the circumstances where the defendant first gave chase to the officer, then lied to the officer, and where the officer observed a triangular-shaped bulge beneath the defendant's shirt), *cert. denied*, 522 U.S. 1051, 139 L. Ed. 2d 643 (1998); *United States v. Thompson*, 597 F.2d 187, 191 (9th Cir. 1979) (concluding that an officer's act of reaching into the defendant's coat pocket for a weapon was a permissible limited intrusion based upon the defendant's repeated efforts to reach into his pocket despite the officers' warnings not to, coupled with the officer's inability to determine from the pat-down whether the pocket of a bulky coat contained a weapon); *United States v. Hill*, 545 F.2d 1191, 1193 (9th Cir. 1976) (holding that the lifting of the defendant's shirt was not overly intrusive under *Terry* where the defendant was stopped shortly after and within five hundred feet of an armed bank robbery and where the bulge in the defendant's clothing was consistent with the shape and size of a weapon); *U.S. v. Edmonds*, 948 F. Supp. 562, 566 (E.D.Va. 1996) (holding that, where the officer found the defendant sitting in a parked car with the lights and engine off in a tow-away zone located in a high-crime area at 10:30 p.m., and where the defendant acted nervously in response to the officer's request that he lift his shirt, the officer did not exceed the permissible scope of a weapons search under *Terry* in drawing his weapon and lifting

POTTER v. HILEMN LABS., INC.

[150 N.C. App. 326 (2002)]

defendant's shirt), *affirmed*, 149 F.3d 1171 (4th Cir. 1998), *cert. denied*, 525 U.S. 912, 142 L. Ed. 2d 212 (1998).

·   In the instant case, defendant was stopped in connection with a road block check for intoxicated drivers. At no point did defendant indicate that he might reach for a weapon on his person or pose any threat of harm to Officer Lewis. Moreover, according to Officer Lewis, the bulge in defendant's pants was "slightly smaller than a tennis ball" and was therefore inconsistent with the presence of a weapon such as a gun or a knife. Such circumstances do not warrant an overly intrusive search beneath defendant's outer clothing, especially where a pat-down of defendant's outer clothing might have quickly and easily dispelled Officer Lewis' suspicions that defendant was in possession of a weapon.

For the reasons stated herein, I would hold that Officer Lewis' actions violated defendant's Fourth Amendment right to be free from unreasonable searches, and I would therefore vacate the judgment against defendant, reverse the trial court's order denying the motion to suppress, and remand to the trial court with instructions to grant the motion to suppress and for further proceedings.